**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARITY M. LYNCH,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **Case No. 12-1778** |
| | : | |
| **THE SCHOOL DISTRICT** | : | |
| **OF PHILADELPHIA, WOOLWORTH** | : | |
| **DAVIS and DONALD RICKFORD,** | : | |
| **Defendants** | : | |

---

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Defendants The School District of Philadelphia, Woolworth Davis, and Donald Rickford respectfully move for Summary Judgment pursuant to Fed. R. Civ. P. 56. The bases for this Motion are set forth in the accompanying Memorandum of Law.

WHEREFORE, Defendants respectfully request that this Motion for Summary Judgment be granted in its entirety.

Dated: June 28, 2013          BY:    *Talib N. Ellison*
                                      Talib N. Ellison
                                      Assistant General Counsel
                                      Office of the General Counsel
                                      The School District of Philadelphia
                                      440 N. Broad Street, Suite 313
                                      Philadelphia, PA   19130-4015
                                      Tel: (215) 400-5416
                                      Fax: (215) 400-4121

                                      Counsel for Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARITY M. LYNCH,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **Case No. 12-1778** |
| | : | |
| **THE SCHOOL DISTRICT** | : | |
| **OF PHILADELPHIA, WOOLWORTH** | : | |
| **DAVIS and DONALD RICKFORD,** | : | |
| **Defendants** | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
FOR SUMMARY JUDGMENT**

Defendants The School District of Philadelphia, Woolworth Davis and Donald Rickford (hereinafter "SDP Defendants") respectfully submit this Memorandum of Law in Support of SDP Defendants' Motion for Summary Judgment, and in support thereof, aver the following:

**I.     PROCEDURAL HISTORY**

Plaintiff filed a Complaint in the United States District Court for the Eastern District of Pennsylvania on April 6, 2012.  *See generally,* Complaint of Plaintiff (hereinafter "Complaint") at Doc. No. 1. In her Complaint, Plaintiff alleged that SDP Defendants "breached contractual obligations," violated her "rights and "civil rights," and violated her "substantive and procedural civil rights" when she was denied due process at several of the hearings conducted by the School District of Philadelphia. Id. at ¶¶ 14, 17-19.

On May 9, 2012, SDP Defendants filed a Motion to Dismiss all claims set forth in the Complaint.  On August 20, 2012, this Court granted Defendants' Motion to Dismiss

as to Plaintiff's breach of contract and substantive due process claims. *See* Order on SDP Defendants' Motion to Dismiss at Doc. No. 8, pp. 2-3. However, this Court denied dismissal of Plaintiff's procedural due process claim, which is now Plaintiff's sole remaining claim. *Id.* at 3.

Defendants now file the instant motion seeking summary judgment as to Plaintiff's extant procedural due process claim. For the reasons set forth below, SDP Defendants are entitled to summary judgment based on the undisputed facts and as a matter of law.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS[i]

### A.  The Parties

1.      From 2001 to 2011, Plaintiff was an employee of Defendant The School District of Philadelphia (hereinafter "SDP"), where she held various part time and full time positions. Compl. at ¶ 1; *see also*, May 17, 2013 Deposition of Plaintiff Charity Lynch (hereinafter "Lynch Dep.") attached hereto as Exhibit 1, at 12:10-18, 176:8-13.

2.      Plaintiff began her employment with SDP as an apprentice teacher in music education. *Id.*. at 12:10-12.

3.      In November 2009 Plaintiff began working as a full-time teacher with an intern certificate at Dr. Ethel Allen Promise Academy (hereinafter "Ethel Allen"). Lynch Dep. at 66:1-3; 67:9-14.

4.      During the relevant timeframe for this matter, Defendant Woolworth Davis ("Principal") worked as the principal at Ethel Allen. Compl. at ¶ 3. However, Davis retired from Ethel Allen Promise Academy in June 2012. *See* May 29, 2013

Deposition of Defendant Woolworth Davis (hereinafter "Davis Dep.") attached hereto as Exhibit 2, at 5:19-24.

5.      At the time of Plaintiff's termination from SDP, Defendant Donald Rickford served as the acting Chief Talent and Development Officer. Compl. at ¶ 4. Plaintiff has never met, spoken with, or otherwise interacted with Defendant Rickford. Lynch Dep. at 68:21-23.  Defendant Rickford's sole connection to Plaintiff is the fact that he signed off on the recommendation for Plaintiff's termination. Lynch Dep. at 68:14-23.

### B.  General SEH-204 Unsatisfactory Incidents and Memos

6.      While Plaintiff was a Special Education Teacher at Ethel Allen, she received numerous memos from the Principal informing her that she failed to do numerous tasks required of her such as failing to turn in lesson plans, failing to regularly meet with the Principal at scheduled times, and failing to provide adequate individual education plans for special education and learning support children. *See* Disciplinary Memoranda, attached hereto as Exhibit 3.

7.      Memos were informal and written to remind the Plaintiff of her job responsibilities. Davis Dep. at. 61:12-23; *see* Ex. 3.

8.      However, as her performance issues persisted, Defendant Davis was compelled to take additional, formal action against Plaintiff.  Davis Dep. at 74:10-17.

9.      In each of these incidents, Plaintiff was notified of the formal charges that were being brought against her by Davis. Lynch Dep. at 179:15-23.  These formal charges were brought in the form of an SEH-204 Unsatisfactory Incident Report.   Davis Dep. at 61:24-62:2.

10. Plaintiff was aware and understood that if she had a question about or disagreed with the issues addressed in the memos, she would be able to meet with Defendant Davis. Lynch Dep. at 79:18-20.

11. Defendant Davis wrote many memos to Plaintiff before resorting to formally issuing Plaintiff a SEH-204 Report. Davis Dep. at 15:18-19. An SEH-204 write-up entailed conducting a formal proceeding, where, again, Plaintiff is provided an opportunity to tell her version and refute the charges, with the assistance of union representation. Davis Dep. at 61:24-63:2.

12. Plaintiff received numerous SEH-204 unsatisfactory incident reports as a result of her underperformance. Lynch Dep. 70:5-71:18; *see also,* SEH-204 Unsatisfactory Incident Reports, attached hereto as Exhibit 4.

### i. SEH-204 Unsatisfactory Incident for not preparing Individual Education Plans

13. On June 1, 2011, Plaintiff received an SEH-204 for an incident where she failed to prepare Individual Education Plans. *See* June 1, 2011 SEH-204, attached hereto as Exhibit 5. In accordance with SDP procedures, Defendant Davis gave Plaintiff notice of a conference that was scheduled for June 6, 2011, five days later. *See* Ex. 5. However, Plaintiff claims that she did not attend the meeting because her union representative was unavailable. Lynch Dep. at 117:3-118:5.

14. On June 6, 2011, Defendant Davis informed Plaintiff that she failed to attend the meeting and rescheduled the conference for June 13, 2011. *See* Ex. 5. Plaintiff also failed to attend the subsequent meeting, claiming again that her union representative was unavailable. Lynch Dep. at 119:20-120:2.

15.     Because it was the end of the school year, Defendant Davis once again rescheduled the hearing for the following school year.   Davis Dep. at 47:6-17. A conference was eventually held on September 19, 2011 to address this particular SEH-204.  *See* September 19, 2011 Warning Conference Summary, attached hereto as Exhibit 6.  At the conference, Plaintiff received a summary of the charges, received evidence collected by Defendant Davis, and was provided with the opportunity to respond to the evidence.  *See* Ex. 6.  Plaintiff also received the assistance of a union representative advocating on her behalf. Lynch Dep. at 143:1-19.

16.     After this conference, a second-level hearing was held to consider Defendant's Davis recommendation for suspension, as Defendant Davis has no authority to impart discipline.  Davis Dep. at 62:3-24; *see also,* October 5, 2011 Second Level Conference Summary, attached hereto as Exhibit 7.

17.     Plaintiff understood that at a second-level hearing, she would be given the opportunity to once again provide her version of events, and address anything that might have been missed, or that she considered biased or untoward, at the first-level hearing. Lynch Dep. at 144:8-12; 146:14-24; 148:19-149:4.

18.     The second-level hearing was conducted between the regional superintendent Joel Boyd, Plaintiff, and a union representative. Davis Dep. at 62:16-63:1; *See* Ex. 7.  Defendant Davis was not present for, nor did he participate in this hearing. Davis Dep. at 72:18-73:5; *see* Ex. 7.

19.     Plaintiff freely testified on her own behalf and provided arguments against the allegations made against her. Lynch Dep. at 149:6-9.  She was not prevented from

providing her side of the story and was not cut-off or otherwise deprived a full opportunity to be heard. Lynch Dep. at 149:10-13.

20.     As a result of the incident giving rise to the underlying SEH-204, and in light of prior incidents, regional superintendant Joel Boyd recommended that Plaintiff be suspended for three days. *See* Ex. 7. In the notice of suspension, Plaintiff was warned that further incidents or unsatisfactory performance could result in discipline, including termination. Lynch Dep. at 153:4-14; *see* Ex. 7.

### ii.     SEH-204 Unsatisfactory Incident on July 12, 2011

21.     Plaintiff received an additional SEH-204 Unsatisfactory Incident Report from Defendant Davis on July 12, 2011.  The SEH-204 notice advised Plaintiff that an incident occurred and that Plaintiff would have an opportunity to be heard. Lynch Dep. at 48:19-49:2; *see also,* July 12, 2011 SEH-204, attached hereto as Exhibit 8.

22.     An investigatory conference was held on September 19, 2011 for the July SEH-204, where it was alleged that Plaintiff used corporal punishment on a student. Lynch Dep. at 126: 4-21; *see* Ex. 8.

23.     At the investigatory conference, Plaintiff was accompanied by a union representative and was afforded the opportunity to freely respond to the allegations against her. Lynch Dep. at 127:2-128:8; *see* Ex. 8.

24.     Statements from students who were present at the time of the alleged incident giving rise to the SEH-204 were collected by Defendant Davis at one-on-one interviews he conducted in his office. Davis Dep. at 17:4-19; *See* Ex .8; *see also*, Student Statements, attached hereto as Exhibit 9.  The students were simply asked to document what they saw occur. Davis Dep. at 33:18-19; *see* Ex. 8-9. Defendant Davis only asked

the students to detail what happened and did not ask any additional questions of the students.  Davis Dep. at 42:6-15.

25.     In order to make sure that the students did not collaborate, Defendant Davis separated the students during their interviews. Davis Dep. at 72:2-7. The collected statements were provided to Plaintiff at the initial hearing and Plaintiff had the opportunity to review the statements prior to the conference.  Lynch Dep. at 188:19-189.

26.     It is against SDP policy to allow student participation in these formal disciplinary proceedings. Davis Dep. at 39:5-8.

27.     The student statements were all uniform in detail insofar as they all indicated that Plaintiff engaged in inappropriate physical contact with another student. Davis Dep. at 71:18-72:13.

28.     Before formal charges were even considered, Defendant Davis asked Plaintiff to document the incident in order to get her perspective on what happened. Davis Dep. at 73:20-74:5.  Plaintiff provided her version of the incident on the same day that it occurred. Lynch Dep. at 131:15-133:1.

29.     At the conference, Plaintiff was able to provide all documents and evidence in her possession related to the incident.  Lynch Dep. at 155:1-8.  She was also able to make any arguments she wanted with respect to the student statements.   Lynch Dep. at 155:1-8; *see* Ex. 8.

30.     Plaintiff drafted a more detailed, typed account of the at-issue incident, for the purposes of submission at the conference. Lynch Dep. at 156:9-157:2; *see* Lynch Response to all SEH-204s, attached hereto as Exhibit 10.

31.     This July SEH-204 incident was recommended for a second-level hearing, which was held on November 7, 2011. Lynch Dep. at 158:9-24.  At the second-level hearing, Plaintiff was given yet another opportunity to respond to the allegations related to the incident and to provide any documents necessary. Lynch Dep. at 159:1-10.  Again, Defendant Davis was not permitted to participate in this hearing, and was not present. *See* November 16, 2011 Second Level Conference Summary, attached hereto as Exhibit 11.  Plaintiff's union representative was permitted to be present to advocate on her behalf. *See* Ex. 11.

32.     As a result of this incident and Plaintiff's overall underperformance at Ethel Allen, it was recommended that Plaintiff be terminated.  *See* Ex. 11.

**C.  Collective Bargaining Agreement**

33.     As a teacher with The School District of Philadelphia, Plaintiff was a member of the Philadelphia Federation of Teachers ("PFT") union.  Lynch Dep. at 33:24-34:15. Upon becoming a member, Plaintiff received a copy of, and reviewed, the Collective Bargaining Agreement (hereinafter "CBA") negotiated between the PFT and the SDP.  Lynch Dep. at 33:24-34:4.   The CBA specifically identifies and provides a detailed description of the "Due Process Procedures" and "Procedure for Adjustment of Grievances" applicable for all PFT members, including Plaintiff. *See* PFT-SDP Collective Bargaining Agreement, attached hereto as Exhibit 12, at pp. 49-51, 52-54.

34.     Plaintiff admits that she fully apprised herself of the "Due Process Procedures" listed in the CBA. Lynch Dep. at 35:3-11; *see* Ex. 12, at p. 49.

35.     Plaintiff received several negative ratings, write-ups, and other disciplinary warnings and suspensions during her time as an employee with SDP.   Lynch Dep. at 41:18-23; Davis Dep. at 25:5-18; *see* Exs.3-5,8.

36.     Plaintiff admits that she reviewed the "Conference Procedures" under the "Due Process Procedures" section of the CBA, and was aware that teachers had the right to have a conference with the rater and/or Principal when they were negatively rated or otherwise disciplined.  Lynch Dep. at 35:12-18.

37.     Plaintiff was also aware that within 10 school days after being rated, the Principal and/or rater were required to provide her with a copy of the ratings. Lynch Dep. at 36:24-37:4; *see* Ex. 12, at p. 49.    Plaintiff does not dispute that this procedure was consistently followed by Defendant Davis with respect to his evaluations of Plaintiff's performance.  Lynch Dep. at 88:15-89:20, 90:21-24.

38.     The CBA further allows an employee to invoke the grievance procedure if he/she believes that his or her rating is improper because of capriciousness, arbitrariness, unfairness, prejudice, failure to conform with prevailing processes of rating or absence of factual support for such rating." Lynch Dep. at 38:2-11; *see also,* Ex. 12, at p. 50.

39.     Plaintiff admits that, consistent with her rights under the CBA, she contacted a union representative on various occasions, when she thought that the "process of the evaluation was not fair or inaccurate," in order to meet with the Principal and potentially amend her ratings.  Lynch Dep. at 38:15-39:10.  Plaintiff concedes that on those occasions, Defendant Davis never refused to meet with her to give her an opportunity to be heard. Lynch Dep. at 52:24-53:6.

40.     Defendant Davis was also aware of the CBA's "Due Process Procedures" and understood that if he had any disciplinary problems with a teacher, he was to follow the procedures laid out. Davis Dep. at 69:7-20.  In short, whenever Defendant Davis recommended that Plaintiff be disciplined, he utilized the procedures laid out in the "Due Process Procedures" section of the CBA.  Davis Dep. at 69:21-24.

41.     In fact, Defendant Davis complied with all of the due process requirements under the CBA, and actually provided Plaintiff with even more notice for disciplinary hearings than what was required under the CBA. Davis Dep. at 70:5-15.  The CBA only required Defendant Davis to provide 24 hours notice before a meeting, but he provided Plaintiff with at least 5 days notice. Davis Dep. at 70:5-15; *see* Ex. 5.

**D.  Grievance Procedures**

42.     The CBA provides for a "Procedure for Adjustment of Grievances" which states that an "employee having a grievance, complaint or problem shall first discuss the matter with the Principal . . . with the objective of resolving the matter informally."  *See* Ex. 12, at p. 52.

43.     Plaintiff understood that if she had a grievance, or otherwise took quarrel with any disciplinary actions taken against her, she had the right and opportunity to discuss the incident with Defendant Davis.   Lynch Dep. at 53:7-18. Plaintiff also understood that she was entitled to union representation at these meetings.  Lynch Dep. at 52:13-23.

44.     It was Plaintiff's belief that the purpose of these meetings was to give her an opportunity to challenge any discipline by providing exculpatory evidence, documentary or otherwise, with the intended purpose of amending or even disposing of

the disciplinary action taken against her.  Lynch Dep. at 53:7-54:1; *see also,* Ex. 12, at p. 52.

45.     Plaintiff admits that she was free to utilize this process with respect to all disciplinary action taken against her. Lynch Dep. at. 53:8-54:9.

46.     Plaintiff further admits that neither Defendant Davis nor anyone at SDP ever deprived her of these opportunities to be heard.  Lynch Dep. at 149:6-13, 151:24-153:3.  Defendant Davis likewise testified that Plaintiff always had an opportunity to be heard and to refute any discipline or adverse employment action taken against her.  Davis Dep. at 72:22-73:2.

47.     This opportunity to be heard extended beyond Defendant Davis in that Plaintiff also had available to her—as provided under the CBA and other SDP procedures—the opportunity to challenge her discipline with other SDP administrators at various stages and levels  in the process.  Lynch Dep. at 146:6-24; Davis Dep. at 62:16-24; *see also,* Ex. 12, at p. 52.

48.     When Plaintiff received an unsatisfactory incident, Plaintiff was aware of the different levels of hearings available to Plaintiff.  Lynch Dep. at 144:13-16.   At the first-level hearing, Plaintiff understood that she, her union representative, and the principal met to discuss the incident. Lynch Dep. at 145:13-18.  At the conclusion of the meeting, the principal made recommendations for discipline, but had no authority to actually discipline Plaintiff. Lynch Dep. at 145:19-22; Davis Dep. at 62:3-6, 63:9-16. The incident and recommendation were then sent to a regional office and either got placed in the personnel file of Plaintiff or was sent to a second-level hearing. Lynch Dep. at 145:23-146:5; Davis Dep. at 63:2-16.

49.     At the second-level hearing, Plaintiff understood that she met with the assistant superintendant and her union representative. Lynch Dep. at 146:6-13.   The principal, Defendant Davis, was not present at the second-level hearings. Davis Dep. at 62:16-24; *see* Exs. 7, 11. At the second-level hearing, the first-level hearing and recommendation were reviewed and Plaintiff was given another opportunity to address the incident. Lynch Dep. at 146:14-21.

50.     The grievance procedures laid out in the CBA was another opportunity for Plaintiff to address the incident if she did not agree with the recommendation after the second-level hearing. Lynch Dep. at 177:6-11.

51.      Plaintiff also understood that as a final step, arbitration was available to her when she had a grievance, and she acknowledges that she utilized the CBA to familiarize herself with this process. Lynch Dep. at 57:19-58:2.  SDP's termination letter also informed Plaintiff of her rights to appeal the decision by requesting a hearing before the Hearing Office of the School Reform Commission or by utilizing the grievance procedures laid out in the CBA.  *See* Termination Letter, attached  hereto as Exhibit 13, at p. 8.

52.     Plaintiff never attempted to arbitrate any discipline exacted against her, including her termination, but claims that she contacted her union in order to initiate the grievance process.  Lynch Dep. at 176:11-177:17; Davis Dep. at 64:2-10.

**E.  Post-Termination**

53.     After Plaintiff's termination with SDP, she worked at Solomon Charter School from September 2012 until March 2013. Lynch Dep. at 177:18-178:15.   At

Solomon Charter School, Plaintiff taught special education, math, and literacy. Lynch Dep. at 178:22-24.

## III.   LEGAL ARGUMENT

### A.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A motion for summary judgment will be denied when there is a "genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott, Ltd*., 584 F.3d 575, 581 (3d Cir. 2009).  In determining whether the movant has met his burden, the court must inquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-252 (1986).  "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. G*leason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).  A fact is considered to be "material" if there is a possibility that it would "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is considered to be genuine if there is evidence that a "reasonable jury could return verdict for the nonmoving party. Id.

Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In such a case, "there can be 'no genuine issue as to

any material fact' since a complete failure of proof concerning an essential element of the

nonmoving party's case renders all other facts immaterial." *Id.* at 323

**B.  Analysis**

> 1.  *Summary judgment should be granted as a matter of law because Plaintiff was aware of and was provided with her procedural due process rights under the CBA and was not denied her procedural due process rights at her suspension and termination proceedings.*

In Plaintiff's Complaint, she alleges that Defendants " . . . procedural rights civil rights

under 42 USC [§] 1983 were violated when she was denied due process at several

hearings conducted by [SDP]." <u>Compl.</u> at ¶ 17.   Based on the undisputed facts,

Defendants did not deny Plaintiff her procedural due process rights.   In analyzing a

procedural due process claim, the Court can begin with the seminal case of *Cleveland Bd.*

*of Educ. v. Loudermill*, in which the Supreme Court squarely addressed what was

required by employers in order to comport with due process. 470 U.S. 532 (1985).

Procedural due process requires that a deprivation of property be "preceded by notice and

opportunity for hearing appropriate to the nature of the case, and the opportunity to be

heard must be at a meaningful time and in a meaningful manner."  *Midnight Sessions,*

*Ltd. v. City of Philadelphia*, 945 F.2d 667, 680 (3d Cir. 1991) (citing *Loudermill*, 470

U.S. at 542).  This requires "some kind of hearing prior to the discharge of an employee. .

. ." *Id*.  *Loudermill* noted that a pretermination opportunity to respond was needed, which

was evident from balancing the competing interests. *Id*.  Due process is "flexible" and the

procedure required varies depending on the situation. *Mathews v. Eldridge*, 424 U.S. 319,

321 (1976).  Depending on the importance of the interests involved and nature of the

subsequent proceedings, the formality and procedural requirements vary. *Loudermill*, 470

U.S. at 545.

### a. Plaintiff was not denied her procedural due process rights at her suspension and termination hearings because she was given notice, an opportunity to respond, and an explanation of the charges against her.

Plaintiff was not denied her procedural due process rights at any of her hearings because she was given multiple opportunities to respond to the allegations made against her. Due process requires notice, an explanation of the charges, and an opportunity to respond. *McDaniels v. Flick*, 59 F.3d 446, 456 (3d Cir. 1995). In *McDaniels*, the Plaintiff McDaniels was given notice of the nature of the first meeting and an explanation of the case against him. *Id.* At the first meeting, McDaniels was asked for his response to the allegations and was encouraged to make further responses to the allegations against him. *Id.* He then met with the board three weeks later in order to respond to the pretermination charges by denying them. *Id.* at 456-57. The Court determined that adequate notice and an adequate opportunity to respond was given. *Id.* at 457.

In this case, at Plaintiff's suspension proceedings, Defendant Davis gave her notice of the conference and identified the incident to which it referred. *See* Ex. 5. This notice was consistent with the requirements under the CBA. *See* Ex. 12, at p. 50. The CBA only requires an administrator to provide 24 hours notice and the subject of the meeting. *See* Ex. 12, at p. 50. However, Defendant Davis provided Plaintiff with five days notice. Facts at ¶ 13. When Plaintiff failed to attend the conference, the Principal provided her notice of the re-scheduled conference. Facts at ¶ 14; *see* Ex. 5. When Plaintiff attended the summary conference, she received evidence of the allegations, was provided with an opportunity to respond to the allegations and received a summary of the conference. Facts at ¶ 15. Furthermore, Plaintiff was entitled have a union representative present at these suspension proceedings. Facts at ¶ 15.

Then, a second-level hearing was scheduled, the purpose of which was to allow Plaintiff to address anything that may have been missed during the summary conference, and to allow a third-party (regional superintendant) to review the underlying proceedings to make sure that Plaintiff received a full and fair hearing. Facts at ¶¶ 16-19.   At the second-level hearing, Plaintiff was once again afforded the opportunity to testify and refute the allegations made against her, and was in no way prevented from providing her side of the story. Facts at ¶¶ 17-19.   In sum, at every stage, Plaintiff was provided notice, an explanation of the charges, and was given an opportunity to respond. *McDaniels*, 59 F.3d at 456. Thus, Plaintiff clearly was not denied her procedural due process rights for her suspension proceedings.

As for Plaintiff's termination proceedings, she was afforded the same adequate procedural due process and given more than one opportunity to be heard.  Facts at ¶ 21. Plaintiff's leading complaint with the termination proceedings was that she did not have an opportunity to cross-examine the student witnesses who provided written statements. "[S]omething less than a fully evidentiary hearing is sufficient" prior to disciplinary or adverse action. *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ*., 574 F.3d 214, 221 (3d Cir. 2009).   In this case, Plaintiff documented her side of the story on the day the incident occurred and submitted it to Defendant Davis. Facts at ¶ 28.  At an investigatory conference, Plaintiff made responses to allegations made against her and received copies of the statements made by students.  Facts at ¶¶ 23-25.  These statements were given to Plaintiff prior to the meeting and Plaintiff was able to review the statements and address then at her conference. Facts at ¶ 25.  As a matter of school policy, students were not allowed to be present at Plaintiff's hearings.  Facts at ¶ 26.

Moreover, Defendant Davis recognized that, despite being kept apart so as to avoid influencing one another, the student statements were all uniform in their description of the events. Facts at ¶ 27. Therefore, he saw no need to bring any of the individual students in for further questioning.  Facts at ¶ 27.

Nonetheless, Plaintiff was not precluded from presenting any documents related to the incident and, in fact, provided a detailed, typed account of her side of the story. Facts at ¶¶ 28-30.  Plaintiff was then informed that a second-level hearing would be held. Facts at ¶ 31.  At the second-level hearing, Plaintiff was again given an opportunity to fully respond to the allegations made against her in front of someone other than Defendant Davis. *Id.* She was also given the opportunity to provide additional documents to support her case and had a union representative advocating on her behalf.  *Id.*

Based on these facts, this Court can only conclude that Plaintiff was not deprived of the opportunity to gather evidence to defend herself, was not prevented from reviewing the student statements made against her and was not prevented from presenting her side of the story.  Furthermore, although she was free to do so, and indeed, did raise the argument at each level of the disciplinary proceedings, no facts support Plaintiff's contention that the students were "coerced" to make "false or misleading" statements about the incident.  Compl. at ¶ 14; Facts at ¶¶ 23-25.  Plaintiff was provided with ample notice, multiple explanations of the charges against her, and given numerous opportunities to respond to the allegations against her. Thus, SDP Defendants did not deny Plaintiff her procedural due process rights at her termination proceedings and summary judgment should be granted as a matter of law.

### b. Plaintiff was provided with appropriate procedural due process through the CBA grievance and arbitration procedure.

If Plaintiff believed that she was denied the opportunity to present her side or denied the opportunity to interview the students herself, she could have availed herself of the grievance procedures laid out in the CBA. *See* Ex.12. "If there is a process in the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). In *Alvin*, Plaintiff did not avail himself of the grievance procedures provided by the University and was precluded from showing that he was denied procedural due process. *Id*. at 116.

In this case, Plaintiff was aware of the "Procedure for Adjustment Grievances" provided in the CBA. Facts at ¶¶ 42-43, 48-51. After Plaintiff's second-level hearing, Plaintiff was fully aware that she was able to appeal her termination through the grievance process. Facts at ¶¶ 48-49. Plaintiff was once again reminded in her termination letter that she could utilize the grievance procedure under the CBA. *See* Ex. 13, at p. 6. However, Plaintiff failed to utilize the grievance procedure and cannot now go back and claim that she was denied procedural due process. Facts at ¶ 52. Based on these facts, summary judgment should be granted as a matter of law.

## V.     Conclusion

Accordingly, Plaintiff cannot establish that Defendants failed denied her procedural due process rights. For all of the reasons set forth above, Defendants request that their Motion for Summary Judgment be granted.

Respectfully submitted,

Dated: June 28, 2013

/s/ *Talib N. Ellison*
Talib N. Ellison
Assistant General Counsel
School District of Philadelphia
440 North Broad Street, Suite 313
Philadelphia, Pennsylvania 19130
tellison@philasd.org
Pa Bar No.203331

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARITY M. LYNCH,** | : | |
|     **Plaintiff** | : | |
| | : | |
| **v.** | : | **Case No. 12-1778** |
| | : | |
| **THE SCHOOL DISTRICT** | : | |
| **OF PHILADELPHIA, WOOLWORTH** | : | |
| **DAVIS and DONALD RICKFORD** | : | |
|     **Defendants** | : | |

**ORDER**

    **AND NOW**, on this ____ day of _____, 2013, upon consideration of Defendants' MOTION FOR SUMMARY JUDGMENT, and any response thereto, it is

    **ORDERED** that Defendants' Motion is GRANTED and the Complaint is DISMISSED WITH PREJUDICE.

BY THE COURT:

_____

J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARITY M. LYNCH,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **Case No. 12-1778** |
| | : | |
| **THE SCHOOL DISTRICT** | : | |
| **OF PHILADELPHIA, WOOLWORTH** | : | |
| **DAVIS and DONALD RICKFORD** | : | |
| **Defendants** | : | |

---

## CERTIFICATE OF SERVICE

---

I, Talib N. Ellison, Assistant General Counsel, certify that, on this day, a true and correct copy of the above MOTION FOR SUMMARY JUDGMENT, supporting memorandum of law, and proposed order were electronically filed with the Office of the Clerk of the United States District Court for the Eastern District of Pennsylvania. Copies of these documents are available for viewing and downloading on the Court's ECF system.

Dated: June 28, 2013

_s/ Talib N. Ellison_
Talib N. Ellison
Assistant General Counsel

Counsel for Defendants

---

[i] The following facts are either undisputed, or are based upon allegations made by Plaintiff and accepted by the Defendants as true for purposes of this motion only.