| | | |
|---|---|---|
| CHARITY M. LYNCH | : | UNITED STATES DISTRICT |
| 257 E. High Street | : | COURT FOR THE EASTERN |
| Philadelphia, PA 19144 | : | DISTRICT OF PENNSYLVANIA |
| vs. | : | |
| SCHOOL DISTRICT OF PHILADELPHIA | : | 2:12-cv-01778-JD |
| 440 North Broad Street | : | |
| Philadelphia, PA 19130 | : | |
| and | : | |
| WOOLWORTH V. DAVIS, Principal of | : | |
| Dr. Ethel D. Allen Promise Academy | : | |
| School District of Philadelphia | : | |
| 440 North Broad Street | : | |
| Philadelphia, PA 19130 | : | |
| and | : | |
| DONALD L. RICKFORD | : | |
| School District of Philadelphia | : | |
| 440 North Broad Street | : | |
| Philadelphia, PA 19130 | : | JURY TRIAL DEMANDED |

## ORDER

AND NOW, this _____ day of _____, 2013, upon consideration of defendants' motion for summary judgment, and plaintiff's response thereto, it is hereby ORDERED and DECREED that defendants' motion is DENIED.

BY THE COURT:

_____
Honorable Jan E. DuBois
United States District Court Judge

LAW OFFICES OF WILLIAM C. REIL
BY: William C. Reil, Esquire
Identification No. 26833
42 S. 15th Street, Suite 210
Philadelphia, PA 19102
215-564-1635                                    ATTORNEY FOR PLAINTIFF

| | |
|---|---|
| CHARITY M. LYNCH : | UNITED STATES DISTRICT |
| 257 E. High Street : | COURT FOR THE EASTERN |
| Philadelphia, PA 19144 : | DISTRICT OF PENNSYLVANIA |
| vs. : | |
| SCHOOL DISTRICT OF PHILADELPHIA : | 2:12-cv-01778-JD |
| 440 North Broad Street : | |
| Philadelphia, PA 19130 : | |
| and : | |
| WOOLWORTH V. DAVIS, Principal of : | |
| Dr. Ethel D. Allen Promise Academy : | |
| School District of Philadelphia : | |
| 440 North Broad Street : | |
| Philadelphia, PA 19130 : | |
| and : | |
| DONALD L. RICKFORD : | |
| School District of Philadelphia : | |
| 440 North Broad Street : | |
| Philadelphia, PA 19130 : | JURY TRIAL DEMANDED |

### PLAINTIFF'S ANSWER TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Charity Lynch, through her undersigned counsel, hereby answers defendant's motion for summary judgment, and in support thereof, it is averred as follows:

**I.   CASE OVERVIEW**

The Court, in its Order on defendants' motion to dismiss, left only the issue of plaintiff's claim for denial of procedural due process. Plaintiff asserted that her due process rights were violated in the manner and method used for her dismissal as a Philadelphia school teacher.

The complaint can best be summarized through the summary and general allegations, which are set out as follows:

    7.    This case arises out of the illegal suspension and dismissal of plaintiff from the School District of Philadelphia.

    8.    Ms. Lynch was suspended and ultimately dismissed arising out of alleged unsatisfactory 204 evaluations, particularly on evaluations that she used corporal punishment on a student.

    9.    Plaintiff is bringing this lawsuit for injunctive relief and damages, including but not limited to, reinstatement to her position as a teacher.

    10.    At all times material herein, the School District of Philadelphia was an educational institution, and the School District and all defendants were acting under the color of state law.

    11.    Charity Lynch was treated as a tenured teacher, and on December 28, 2011, after a suspension of some 3 months, where she was not allowed to teach again in the School District of Philadelphia.

    12.    Plaintiff requests all damages recoverable arising out of her illegal dismissal, as well as consequential damages and equitable relief.

    14.    Defendant School District of Philadelphia breached its contractual obligations, as well as the civil rights of plaintiff, as heretofore described, through the following acts and omissions:

    a)    violating the contractual agreement between Ms. Lynch and the School District of Philadelphia;
    b)    failing to afford Ms. Lynch procedural and substantive due process rights;
    c)    failing to allow Ms. Lynch to gather evidence to defend herself against the charges made by the School District;
    d)    failing to allow Ms. Lynch to appropriately question witnesses and students;
    e)    coercing students to make false or misleading statements against Ms. Lynch;
    f)    commingling the functions of investigation and adjudication with respect to the charges against Ms. Lynch;
    g)    failing to provide plaintiff with incident reports regarding alleged corporal punishment.

    15.    Plaintiff suffered damages, including the loss of her teaching career and salary.

Factually, this case is as follows. Plaintiff was a tenured high school teacher with the School District of Philadelphia. She is 54 years old, and has been treated as a certified teacher. Plaintiff's age, and the fact that she is presently under suspension, will make it difficult if not impossible to get other employment. In effect, plaintiff's teaching license has been rendered useless by the action of the School District of Philadelphia.

Procedurally, plaintiff filed a complaint in this case against the School District of Philadelphia and Woolworth V. Davis and Donald L. Rickford. Woolworth V. Davis was the Principal at plaintiff's last school and was essentially responsible for plaintiff's dismissal, alleging that she had committed corporal punishment on a student. Donald L. Rickford is an administrator with the School District of Philadelphia who signed the letter, to the School Reform Commission, recommending plaintiff's dismissal. The Commission never acted upon that recommendation. The alleged dismissal letter is attached and incorporated as Exhibit "A" to the complaint.

The depositions of plaintiff and defendant Woolworth V. Davis were taken. Plaintiff has dismissed Donald Rickford as a defendant, contingent on the representation that he had no personal knowledge of the facts of the case.

II. **DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Plaintiff replies to defendants' statement of undisputed material facts as follows.

1. Admitted.

2. Admitted.

3. Denied as stated. The deposition and surrounding context speak for themselves.

4. Admitted on information and belief.

5. Denied as stated. The deposition and surrounding context speak for themselves.

6. Denied as stated. The deposition and surrounding context speak for themselves.

7. Denied as a conclusion of law to which no further response is required.

8. Denied as stated. The deposition and surrounding context speak for themselves.

9. Denied as stated. The deposition and surrounding context speak for themselves.

10. Denied as stated. The deposition and surrounding context speak for themselves.

11. Denied as stated. The deposition and surrounding context speak for themselves. Also denied as a conclusion of law.

12. Denied as stated. The deposition and surrounding context speak for themselves.

13. Denied as stated. The deposition and surrounding context speak for themselves.

14. Denied as stated. The deposition and surrounding context speak for themselves.

15. Denied as stated. The deposition and surrounding context speak for themselves.

16. Denied as a conclusion of law to which no further response is required.

17. Denied as a conclusion of law to which no further response is required.

18. Denied as stated. The deposition and surrounding context speak for themselves.

19. Denied as a conclusion of law to which no further response is required.

20. Denied as stated. The deposition and surrounding context speak for themselves.

21. Denied as a conclusion of law to which no further response is required.

22. Denied as stated. The deposition and surrounding context speak for themselves.

23. Denied as stated. The deposition and surrounding context speak for themselves.

24. These statements from students were never subject to any cross-examination, nor was plaintiff or her union representative allowed to cross-examine such students. The handwritten statements thus violated plaintiff's due process rights, because they were taken as true without being able to access the credibility of the declarant.

25. Denied as stated. The deposition and surrounding context speak for themselves.

26. Admitted.

27. Denied as a conclusion of law to which no further response is required.

28. Denied as stated. The deposition and surrounding context speak for themselves.

29. Denied. Plaintiff incorporates her answer set forth in paragraph 24.

30. Denied as stated.

31. Denied as a conclusion of law to which no further response is required.

32. Denied as a conclusion of law to which no further response is required.

33. Denied as a conclusion of law to which no further response is required.

34. Denied as stated. The deposition and surrounding context speak for themselves.

35. Denied as stated. The deposition and surrounding context speak for themselves.

36. Denied as stated. The deposition and surrounding context speak for themselves.

37. Denied as a conclusion of law to which no further response is required.

38. Denied. The CBA does not deal with violation of constitutional rights.

39. Denied as stated. The deposition and surrounding context speak for themselves.

40. Denied as stated. The deposition and surrounding context speak for themselves.

41. Denied as a conclusion of law to which no further response is required.

42. Denied as a conclusion of law to which no further response is required.

43. Denied as stated. The deposition and surrounding context speak for themselves.

44. Denied as stated. The deposition and surrounding context speak for themselves.

45. Denied as stated. The deposition and surrounding context speak for themselves.

46. Denied as stated. The deposition and surrounding context speak for themselves.

47. Denied as a conclusion of law to which no further response is required.

48. Denied as a conclusion of law to which no further response is required.

49. Denied as a conclusion of law to which no further response is required.

50. Denied as stated. The deposition and surrounding context speak for themselves.

51. Denied as a conclusion of law to which no further response is required.

52. Denied. Plaintiff incorporates her answer set forth in paragraph 38.

III.     **ARGUMENT AND CONCLUSIONS OF LAW**

   **Standard for Motion for Summary Judgment**

In order to prevail on a motion for summary judgment, defendants must show, taking facts and inferences in the light most favorable to plaintiff, that no reasonable fact finder could find for the plaintiff on an issue which is a case determinative. *Thomas v. Transamerica Accidental Life Insurance Company*, 761 F. Supp. (D.Or. 1991).  Summary Judgment is inappropriate when credibility is at issue or different ultimate inferences can be reached.  FRCP 56 (c).  In addition to the evidence cited in Rule 56 (c), a court may take into account any material that would be admissible or usable at trial.  Wright and Miller, Federal Practice and Procedure Section 2721 at 40 (2d. Ed. 1983). In evaluating a summary judgment motion, the record will be viewed in the light most favorable to the plaintiff.  Summary judgment is appropriate only if there is no genuine issue of material fact such that a reasonable fact finder could find for the non-moving party. Much of defendants' arguments actually amount to the proffer of counter-evidence on a disputed factual issue.  That defendants believe that they have evidence to convince a jury to see an issue their way, is to be distinguished from the tenet that no reasonable jury can fail to see an issue as defendants do.

   **Statement of Undisputed Facts**

- Plaintiff never received a final termination letter from the School Reform Commission. See Lynch Deposition, Exhibit "A", at page 181.

- Plaintiff was treated unfairly because she was required by the Principal to present her lesson plan in a manner which was not her usual teaching style. See Lynch Deposition, Exhibit "A", at pages 181-182.

- Plaintiff was not given the opportunity to have timely input concerning critical written statements from her students. See Lynch Deposition, Exhibit "A", at page 182.

- Principal Davis did not afford plaintiff or her union representative any opportunity to confront the students who made written statements against plaintiff. See Lynch Deposition, Exhibit "A", at page 183.

- Plaintiff was required by Principal Davis to present a stand-and-deliver lesson, when she had previously been required to present her lessons in a group setting. See Lynch Deposition, Exhibit "A", at page 184.

- Plaintiff indicated that she received memos from Principal Davis in an untimely fashion including a memo with a Christmas date. See Lynch Deposition, Exhibit "A", at page 185.

- The incident involving alleged corporal punishment happened when a student slid down a chair and was returned to plaintiff's classroom after seeing the school nurse and suffering no injuries. See Lynch Deposition, Exhibit "A", at page 186.

- Plaintiff did not touch the student in question or her chair. See Lynch Deposition, Exhibit "A", at page 187.

- Plaintiff had no way to test the credibility of the students who wrote statements concerning the alleged corporal punishment. See Lynch Deposition, Exhibit "A", at page 188.

- Principal Davis was unable to say if the School Reform Commission ever terminated plaintiff's employment. See Davis Deposition, Exhibit "B", at page 9.

- Ms. Lynch was not allowed to interview students whose written statements were used against her at disciplinary hearings and such was school policy. See Davis Deposition, Exhibit "B", at pages 17-19.

- Principal Davis was unable to say when Ms. Lynch received critical documents at a time when she was suspended from school. See Davis Deposition, Exhibit "B", at pages 25-26.

- Principal Davis took documents to Ms. Lynch when she was at the teacher disciplinary facility, but he was unable to remember when that was or when she was dismissed. See Davis Deposition, Exhibit "B", at page 30.

- Principal Davis did not recall when Ms. Lynch received a copy of the statement written by the student alleging corporal punishment, and he was unable to explain how the credibility of that statement could be evaluated. School policy prevented Ms. Lynch or her representative from interviewing the student and the student being present at any disciplinary meetings. See Davis Deposition, Exhibit "B", at pages 37-39.

- Principal Davis testified that memos involving a teacher's conduct did not have to be given to them in a timely manner, according to school policy. See Davis Deposition, Exhibit "B", at page 53.

- Principal Davis testified at deposition that he issued a memo with date of observation for Ms. Lynch on 12/25/10. See Davis Deposition, Exhibit "B", at page 55.

**Civil Rights Cause of Action**

To state a cause of action against the School District under § 1983 for a school

official's deprivation of her constitutional rights, Ms. Lynch must show that her injury resulted from an "official custom or policy" of the School District, which was a driving force behind its or an official's actions. *Monell v. Dep't of Soc. Serv. Of City of New York*, 436 U.S. 658, 690-92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In other words, Ms. Lynch must plead and prove that: (1) there was a violation of her constitutional rights pursuant to an official policy, custom, or practice; and (2) the School District's policy or custom caused the violation. Id. Absent unusual circumstances, "proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incidents includes proof that it was caused by an existing, unconstitutional municipal policy" attributable to a municipal policymaker or makers. *Turner v. City of Phila.*, 22 F. Supp. 2d 434, 437 (E.D.Pa. 1998) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-23, 105 S.Ct. 2427, 85 L. Ed. 2d 791 (1985)).

**Deliberate Indifference**

In order to show reckless or deliberate indifference, it must be shown that officials knew or should have known that plaintiff had a particular need or vulnerability. *Colburn v. Upper Darby*, 838 F.2d 663 (3rd Cir. 1988). It is not necessary to find that the defendant had any specific intent to deprive the plaintiff of their civil rights in order to find in favor of the plaintiff. The plaintiff is entitled to relief if the defendant intended the actions which resulted in a violation of the plaintiff's rights. *Gomez v. Toledo*, 100 S. Ct. 1920 (1980); *Monroe v. Pape*, 365 U.S. 167 (1961); *Skehan v. Board of Trustees*, 538 F.2d 53 (3rd. Cir. 1976) (en banc).

**Gershenfeld**

Plaintiff directs the Court to the case of *George Gershenfeld v. Supreme Court of Pennsylvania*, 641 F. Supp. 1419 (E.D.Pa. 08/19/1986). The *Gershenfeld* case dealt with the factual scenario where George Gershenfeld, an attorney, was disbarred by the Pennsylvania Supreme Court without proper due process. While *Gershenfeld* dealt with the suspension of an attorney and his license to practice law, the distinction between *Gershenfeld* and the instant case is not significant. It is not significant because the action of the School District in suspending plaintiff was a de facto taking of her license to teach.

The *Gershenfeld* Court issued a preliminary injunction and found that the failure to have a proper hearing was in violation of the due process clause of the 14th Amendment. See *Gershenfeld* at paragraph 13.

The *Gershenfeld* Court states at paragraph 43: "It is undisputed that plaintiff's license to practice law, which has been in place for 35 continuous years, is a property interest sufficient to invoke due process protections. See *Barry v. Barchi*, 443 U.S. 55, 64, 61 L. Ed. 2d 365, 99 S. Ct. 2642 (1979)." The Court went on to say: "Once it is determined that due process applies, the question remains what process is due." See *Gershenfeld* at paragraph 43.

In *Barry v. Barchi*, a jockey was suspended by the state racing commission. In paragraph 49 of *Gershenfeld*: "In Barchi, supra, a case almost identical to the present action, the Supreme Court construed a New York statute which defined the disciplinary powers of the state harness racing commission. Under the statutory scheme, the commission was empowered, in the event that a post-race urinalysis indicated that a horse had been drugged, to summarily suspend the trainer of that horse who held his license

from the state. The statute entitled the suspended licensee to a postsuspension hearing, but further provided that "pending such hearing and final determination thereon, the action of the [Board] in . . . suspending a license . . . shall remain in full force and effect." Finally, it is black-letter law that a contract of employment providing that a teacher can only be terminated for cause, gives rise to a property right protected under the Fourteenth Amendment. See *Perry v. Sindermann*, 408 U.S. 593, 599-601 (1972).

### Grievance and Arbitration

Plaintiff grieved her dismissal and went through several stages of arbitration. Thus she exhausted her administrative rights. However, the administrative hearing does not deal with violation of constitutional rights, and the forum for that is the United States District Court.

Lynch also contends that the School District proceedings violated her right to due process. At the hearings with her Principal, the judicial and investigative functions were commingled, because the Principal was in charge of both. This violates not only her right to due process, but also to an impartial tribunal. See *Lyness v. State Board of Medicine*, 605 A.2d 1204, 1210 (Pa. 1992).

### Procedural Due Process

A leading case involving procedural due process in the educational setting is *Cleveland Bd of Education v. Loudermill*, 470 U.S. 532 (1985). *Loudermill* mandates a balancing test between the interest of retaining private employment and the risk of erroneous termination versus the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens.

Plaintiff never received written notice of her dismissal but was told in the "dismissal letter" that it was recommended to the School Reform Commission that she be dismissed. Plaintiff never received any decision from the School Reform Commission. Therefore, plaintiff technically has never been dismissed, and to treat plaintiff as though she were dismissed is a violation of her civil rights.

Deposition testimony indicates that the procedural due process rights of Ms. Lynch were further violated by the use of uncorroborated statements from her students which were taken by the Principal. Neither Ms. Lynch nor her union representative were allowed to interview or cross-examine any of these students. In addition, this rule was the policy of the School District of Philadelphia. These statements form the core of the allegations involving corporal punishment against plaintiff.

Defendant Davis violated the procedural due process rights of Ms. Lynch by impermissibly wearing two hats. He was responsible for gathering evidence against plaintiff while also acting as an adjudicator on that evidence. Ms. Lynch was deprived of the ability to gather any evidence on her behalf or question any student witnesses who made written statements against her.

Ms. Lynch was not given copies of the disciplinary reports signed by Principal Davis in a timely fashion, and therefore she could not formulate an effective defense. Plaintiff was removed from her school for approximately three months before she received the appropriate disciplinary paperwork. Principal Davis repeatedly testified at deposition that he was unsure of the time frame where plaintiff received important documents. However, he did acknowledge that plaintiff was no longer at his school and

on disciplinary suspension when she received the documents from him. Indeed, Principal Davis had one memo to Ms. Lynch dated on Christmas.

      Ms. Lynch was treated as a tenured teacher. She was given hearings by Principal Davis on her alleged misconduct. The issue, for summary judgment purposes, is whether these hearings were fair.

III.   **SUMMARY AND CONCLUSION**

There are substantially contested issues of material fact which would mitigate against summary judgment.

1. Plaintiff has been denied procedural due process for a number of reasons. She was never formally dismissed. She received a letter that the School District was recommending dismissal to the School Reform Commission, but she never received any communication confirming dismissal from the School Reform Commission.

2. Plaintiff has been denied procedural due process because she was not allowed to gather evidence in her defense. She was not allowed to question students whose statements formed the basis of her dismissal. She was not presented with key documents against her while she was at school and in a timely fashion.

3. The School District of Philadelphia violated the procedural due process rights of Ms. Lynch by mandating as school policy that Principal Davis investigate her case, conduct her disciplinary hearing, and make recommendations as to her dismissal.

WHEREFORE, plaintiff submits that defendants' motion be denied.

Respectfully submitted,

*William C. Reil*

William C. Reil, Esquire
Attorney for Plaintiff
07/29/13

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the attached document (s) was served upon all other parties or their counsel of record by:

    X
_____        Regular First Class Mail

_____        Facsimile

_____        Certified Mail

_____        Hand-Delivered

    X
_____        Electronic Filing

*William C. Reil*
William C. Reil, Esquire
Attorney for Plaintiff
42 S. 15th Street, Suite 210
Philadelphia, PA 19102
07/29/13